Areya Holder Aurzada
State Bar No. 24002303
Sabrina Johnson Craig
State Bar No. 24082354
HOLDER LAW
800 West Airport Freeway, Suite 800
Irving, Texas 75062
(972) 438-8800 – Telephone
(972) 438-8825 – Telecopier
Email: areya@holderlawpc.com

COUNSEL FOR ADENIRAN AND SARAH ARIYO

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| ADENIRAN ABRAHAM ARIYO | § | CASE NO. 15-30015-BJH |
| SARAH HOPE ARIYO | § | |
| | § | |
| Debtors | § | Chapter 11 |
| | § | |

## DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION

Adeniran Abraham and Sarah Hope Ariyo ("Debtors") propose the following Third Amended Plan of Reorganization (the "Plan").

## ARTICLE I

## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a reorganization of all liabilities owed by the Debtors, as described herein.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein from the revenues associated with the Debtors' employment, business and rental income and in accordance with the priority distribution established by the Bankruptcy Code.

## ARTICLE II

## DEFINITIONS

As used in this Plan, the following terms shall have their respective meanings set forth below and, unless the context otherwise required, shall be equally applicable to the singular and

plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.1     <u>Allowed</u>: Shall mean with respect to a Claim, except for a Claim which is an Allowed Administrative Expense Claim, a Claim allowable under Section 502 of the Code, Scheduled by a Debtors in their respective Schedules as <u>not</u> disputed, contingent or unliquidated in a specific dollar amount or a Claim proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (a) as to which no objection has been filed with the Bankruptcy Court by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court, or (b) as to which an objection was filed by the Objection Deadline, and then only to the extent allowed by Final Order of the Bankruptcy Court. Unless otherwise specified in this Plan, an Allowed Claim shall not include any amount of punitive damages, penalties, or any amount of interest which may have accrued from and after the Petition Date on any such Claim. Nothing contained herein shall in any way limit the right of the Debtors to request the Bankruptcy Court to designate, pursuant to § 1126(e) of the Code, any Claimant as an entity whose acceptance or rejection of the Plan was not in good faith or is not solicited or procured in good faith or in accordance with the provisions of Chapter 11 of the Code. With respect to an Allowed Administrative Expense Claim, Allowed shall refer solely to Final Orders of the Bankruptcy Court following proper application for approval of payment thereof in accordance with the Code and the Bankruptcy Rules.

2.2     <u>Allowed Administrative Expense Claim</u>: Shall mean an allowed Claim arising from costs or expenses of administration of the Debtors' Estate allowed under Section 503(b) of the Bankruptcy Code, including, without limitation: any actual and necessary expenses of preserving the Debtors' Estate; any actual and necessary expenses of operating a Debtors' business from and after the Petition Date to and including the Confirmation Date; all allowance of compensation or reimbursement of expenses to the extent approved by the Bankruptcy Court under Section 330 of the Bankruptcy Code; and any fees or charges assessed against a Debtors' Estate under Chapter 123, Title 28, United States Code.

2.3     <u>Allowed Claim</u>: Shall mean any Claim in the amount and in the priority classification set forth in any proof of such Claim that has been timely filed in this case, or in the absence of such proof, as set forth in a Debtors' Schedules of Liabilities, as amended, filed in the Case, unless: (i) such Claim has been listed in such Schedule as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only if a proof of such Claim has been timely filed; (ii) such Claim has been objected to or is objected to after entry of the Confirmation Order, in which case such Claim shall be allowed only in such amount and such classification as is authorized by a Final Order of the Bankruptcy Court; or (iii) such Claim has been paid in full, withdrawn or otherwise deemed satisfied in full. An Allowed Claim shall not include un-matured interest accruing after the Petition Date unless otherwise stated in the Plan.

2.4     <u>Bankruptcy Code</u>: Shall mean Title 11 of the United States Code.

2.5 <u>Business Day</u>:  Any day on which banks are open to carry on their ordinary commercial banking business in Plano, Texas.

2.6 <u>Cash</u>:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.7 <u>Causes of Action</u>:  All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtors, for affirmative recovery of Cash or other property of the Estates (whether such Causes are the subject of presently pending lawsuits, adversary proceedings or appeals or otherwise) existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date.

2.8 <u>Chapter 11 Case</u>:  Chapter 11 case of Adeniran and Sarah Ariyo, Case No. 15-30015-BJH-11

2.9 <u>Claim</u>:  Any right against a Debtors to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.10 <u>Collateral</u>:  Property in which the Debtors have an interest that secures, in whole or in part, payment of an Allowed Claim.

2.11 <u>Confirmation</u>:  Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.12 <u>Confirmation Date</u>:  The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code, provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer effect.

2.13 <u>Confirmation Hearing</u>:  The date set by the Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

2.14 <u>Confirmation Order</u>:  Order of the Court confirming the Plan and approving the transactions contemplated herein.

2.15 <u>Court</u>:  The United States Bankruptcy Court for the Northern District of Texas or such other Court as may have jurisdiction of the Chapter 11 Case.

2.16     Creditor:  Any entity that is the holder of a claim or an interest, including but not limited to: (a) a claim that arose on or before the Petition Date, (b) an interest that arose on or before the Record Date, (c) a claim against the Debtors' Estate of any kind specified in § 502(g), § 502(h), or § 502(i) of the Bankruptcy Code or (d) an Administrative Claim.

2.17     Debtors: Adeniran Abraham Ariyo and Sarah Hope Ariyo

2.18     Disclosure Statement:  The written Disclosure Statement in respect to this Plan approved by the Court pursuant to § 1125 of the Bankruptcy Code.

2.19     Disputed Claim:  Any claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

2.20     Effective Date:  The date not more than thirty days (30) days after the entry of the Confirmation Order.

2.21     Estate:  The Estate created in the Chapter 11 Case for the Debtors by Bankruptcy Code § 541.

2.22     Fee Application:  An application of a Professional Person under §§ 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 case.

2.23     Final Distribution:  Final distribution under the Plan to be applied to the payment of the Allowed Claims.

2.24     Final Order:  An order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.25     Holder or Claimholder:  Any entity that is the holder of a claim, including but not limited to (a) a claim that arose on or before the Petition Date, (b) a claim against the Debtors' Estate of any kind specified in § 502(g), § 502(h) or § 502(i) of the Bankruptcy Code or (c) an Administrative Claim.

2.26     Impaired:  When used with respect to any claim, interest or class, it has the same meaning as that contained in § 1124 of the Bankruptcy Code.

2.27     Plan:  The Plan proposed by the Debtors, either in its present form or as it may be amended or modified.

2.28     <u>Order</u>:   An order or judgment of the Bankruptcy Court as entered on the docket.

2.29     <u>Petition Dates</u>: January 2, 2015

2.30     <u>Priority Claims</u>:   Allowed Claim entitled to a priority under, inter alia, Bankruptcy Code §507(a).

2.31     <u>Pro Rata</u>:   Means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Allowed Interest to the amount of the Allowed Claim or Allowed Interest is the same as the ratio of the amount of consideration distributed on account of All Allowed Claims and Allowed Interests of the class in which the particular Allowed Claim or Allowed Interest is included in the amount of All Allowed Claims and Allowed Interests of that Class.

2.32     <u>Professional Person</u>:   Any entity retained or to be compensated pursuant to §§ 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.33     <u>Reorganized Debtors</u>:   Adeniran and Sarah Ariyo as emerged from bankruptcy.

2.34     <u>SEC</u>:   Securities and Exchange Commission.

2.35     <u>Secured Claim</u>: A claim of a creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under § 553 of the Bankruptcy Code, in each case to the extent of the value of said creditor's interest in the Debtors' interests in the property or the amount of the set off, as applicable; provided, however, that nothing herein shall prohibit a secured creditor from making the election provided in § 1111 (b) (2) of the Bankruptcy Code.

2.36     <u>Secured Creditor</u>:   Any Creditor that is the holder of a Secured Claim.

2.37     <u>Substantial Consummation</u>:   The Plan shall be substantially consummated after the first payment has been made and after administrative expenses and claims objections are heard.   Upon substantial consummation, the Reorganized Debtors shall file an Application for a Final Decree.

2.38     <u>Tax Claim</u>:   Any claim that is entitled to priority in payment under § 507(a)(7) of the Bankruptcy Code.

2.39     <u>Undetermined Claim</u>:   A claim that is (a) a Disputed Claim; (b) a claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined administrative claim in respect of an application of a professional person; or (d) a claim that is unliquidated or contingent.

2.40    Unsecured Claim:  Any claim against the Debtors whatsoever, other than 1) a Secured Claim, or 2) a Claim that is not entitled to priority pursuant to the Bankruptcy Code.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS

3.1    Designation of Classes of Claims: The following is a designation of the Classes of Claims under this Plan and includes the combined obligations of both Debtors.  The Debtors are each jointly and severally liable on most if not all of these obligations, and the Debtors are proposing payment in full on all allowed claims. A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

A.    Priority Claims:

Class 1:  All Allowed Administrative Claims.

Class 2:  All Allowed Priority Tax Claims of the Internal Revenue Service (Impaired).

B.    Secured Claims:

Class 3: All Allowed Secured Claims of Alterna Funding I, LLC (Impaired).

Class 4: All Allowed Secured Claims of Alterna Funding I, LLC (Impaired).

Class 5: All Allowed Secured Claims of Alterna Funding I, LLC (Impaired).

Class 6: All Allowed Secured Claims of the Block C South Tower Residences (Unimpaired).

Class 7:  All Allowed Secured Claims of Citizens State Bank (Unimpaired).

Class 8:  All Allowed Secured Claims of Citizens State Bank (Unimpaired).

Class 9: All Allowed Secured Claims of Comerica Bank (Impaired).

Class 10: All Allowed Secured Claims of Dallas County (Impaired).

Class 11:  All Allowed Secured Claims of Greenleaf Village HOA, Inc. (Unimpaired).

Class 12: All Allowed Secured Claims of HomeBank Texas (Impaired).

Class 13: All Allowed Secured Claims of the Internal Revenue Service (Impaired).

Class 14: All Allowed Secured Claims of Kaufman County (Impaired).

Class 15: All Allowed Secured Claims of Baltimore County, Maryland (Impaired).

C.      Unsecured Claims:

Class 16: All Allowed Unsecured Claims (Impaired).

## ARTICLE IV

## PAYMENT OF ADMINISTRATIVE CLAIMS
## AND EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1      Administrative Claims: (Class 1) – Administrative Claims, other than administrative claims filed by governmental units, shall be paid, to the extent allowed by the Court, in full in cash on or before the later of (a) ten (10) days following the Effective Date or (b) ten (10) days following the date on which the Administrative Claims are Allowed by a Final Order of the Court. For purposes of payment of administrative expenses, any administrative claimant desiring to be paid under the Plan must file an application for allowance of Administrative Claim on or before thirty (30) days after the entry of an Order confirming the Plan except as otherwise provided under 11 U.S.C. §503(b)(1)(D). In addition, all quarterly fees to the United States Trustee will be paid until such time that the Debtors' case is closed, converted or dismissed.

4.2      Professional Fee Claims. Each Professional employed pursuant to Section 330 of the Code shall file their final Fee Application with the Court within sixty (60) days after the Effective Date, unless the Court orders otherwise. Service of a final Fee Application or notice related to a final Fee Application shall be promptly made to the Reorganized Debtors and parties requesting notice in this case. Objections to any Professional Fee Claims by any party in interest shall be filed and served not later than twenty-one (21) days after filing and service of a Final Fee Application or service of a notice related to a Final Fee Application. Any unpaid professional fees shall be paid in full by the Debtors within 90 days of the effective date of the Plan or as otherwise agreed to in writing by Debtors and their counsel. Debtor estimates the outstanding combined attorney's fees will be approximately $20,000.00.

4.3      All Allowed Priority Tax Claims of the Internal Revenue Service: (Class 2) – The estimated Class 2 Claim is $216,955.01. The Class 2 claim will be paid in full over a seventy-two (72) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three percent per annum (3.00%). The monthly payment to the IRS will be approximately $3,296.34 per month. The Class 2 Claim is impaired.

## ARTICLE V

## TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

5.1     All Allowed Secured Claims of Alterna Funding I, LLC: (Class 3) - The estimated Class 3 secured claim is $7,364.53 for 30 Gwynnswood Road, Owings Mills, Maryland.  The Class 3 secured claim is an ad valorem tax claim, and the estimated value of 30 Gwynnswood Road is $101,000.00.  Debtors believe the Class 3 secured claim is fully secured as the property does not have any outstanding mortgage debt against it, and the Class 3 Claim is in a first lien position.  The Class 3 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 3 claims will be approximately $163.81 per month.  The Class 3 claimant shall retain its liens against 30 Gwynnswood Road, Owings Mills, Maryland until the Class 3 claim is paid related to that property.  Once the Class 3 Claim is paid in full related to 30 Gwynnswood Road, the Class 3 claimant shall promptly release its lien against that collateral. The Class 3 Claim is impaired.

5.2     All Allowed Secured Claims of  Alterna Funding I, LLC: (Class 4) - The estimated Class 4 secured claim is $7,118.98 for 34 Gwynnswood Road, Owings Mills, Maryland. The Class 4 secured claims is an ad valorem tax claim, and the estimated value of 34 Gwynnswood Road is $100,000.00.  Debtors believe the Class 4 secured claim is fully secured as the property does not have any outstanding mortgage debt against it, and the Class 4 Claims is in a first lien position.  The Class 4 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 4 claim will be approximately $158.36 per month.  The Class 4 claimant shall retain its lien against 34 Gwynnswood Road, Owings Mills, Maryland until the Class 4 claim is paid related to that property.  Once the Class 4 Claim is paid in full related to 34 Gwynnswood Road, the Class 4 claimant shall promptly release its lien against that collateral. The Class 4 Claim is impaired.

5.3     All Allowed Secured Claims of  Alterna Funding I, LLC: (Class 5) - The estimated Class 5 secured claims is $6,623.64 for 38 Gwynnswood Road, Owings Mills, Maryland. The Class 5 secured claim is an ad valorem tax claim, and the estimated value of 38 Gwynnswood Road is $101,000.00.  Debtors believe the Class 5 secured claim is fully secured as the property does not have any outstanding mortgage debt against it, and the Class 5 Claim is in a first lien position.  The Class 5 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 5 claim will be approximately $147.35 per month.  The Class 5 claimant shall retain its liens against 38 Gwynnswood Road, Owings Mills, Maryland until the claim is paid related to that property. Once the Class 5 Claim is paid in full related to 38 Gwynnswood Road, the Class 5 claimant shall promptly release its lien against that collateral. The Class 5 Claim is impaired.

5.4     All Allowed Secured Claims of Block C South Tower Residences: (Class 6) – The estimated Class 6 secured Claim is $6,056.70. Debtors believe the Class 6 secured claim is fully secured as this claim is based upon a condominium association fee that is prior in time to the tax lien asserted by the Internal Revenue Service.  The Class 6 claim shall be paid in full at the time of Confirmation. Upon payment of the allowed secured claim, Block C South Tower

Residences shall promptly release its lien against 2408 Victory Park Lane #931, Dallas, TX. The Class 6 Claim is unimpaired.

5.5 <u>All Allowed Secured Claims of Citizens State Bank</u>: (Class 7) - The estimated Class 7 secured Claim is $180,706.54 for the property located at 519 N. Gun Barrel, Gun Barrel City, Texas ("Note A"). The Debtors believe the Class 7 secured Claim is fully secured, and the Gun Barrel Property is equal to the amount of the Class 7 secured Claim given appropriate time to market. Note A shall be paid in accordance with the original note commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of five percent per annum (5.00%). However, the maturity date will be modified to six years from the Effective Date of the Plan. Beginning on the fifth (5th) anniversary of the Effective Date, pre-maturity interest on Note A will adjust annually to a rate equal to the sum of A) the Prime Interest Rate, plus B) one and one-half percent (1.5%). At no time will the adjusted pre-maturity interest rate be greater than eight percent (8.0%) per annum, or less than five percent (5.0%) per annum. The monthly payment on Note A will be approximately $1,916.67 per month. Upon maturity of Note A, Debtors shall make a balloon payment to pay in full any remaining unpaid balance. The estimated balloon payment is $91,776.00, and Debtors anticipate that they will be able to refinance the balloon payment. The Class 7 claimant shall retain its lien against 519 N. Gun Barrel, Gun Barrel City, Texas until the Class 7 secured claim is paid in full related to that property. Once the Class 7 secured Claim is paid in full, the Class 7 claimant shall promptly release its lien against the Gun Barrel property. The Class 7 Claims are impaired.

5.6 <u>All Allowed Secured Claims of Citizens State Bank</u>: (Class 8) - The estimated Class 8 secured Claim is $367,183.01 for the property located at 103 W. Camp Wisdom Rd, Duncanville, Texas ("Note B"). The Debtors believe the Class 8 secured Claim is fully secured, and the Camp Wisdom Road Property is equal to the amount of the Class 8 secured Claim given appropriate time to market. Note B shall be paid in accordance with the original note commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of five and one-half percent per annum (5.50%). However, the maturity date will be modified to six years from the Effective Date of the Plan. Beginning on the fifth (5th) anniversary of the Effective Date, pre-maturity interest on Note B will adjust annually to a rate equal to the sum of A) the Prime Interest Rate, plus B) one and one-half percent (1.5%). At no time will the adjusted pre-maturity interest rate be greater than eight percent (8.0%) per annum, or less than five percent (5.50%) per annum. The monthly payment on Note B will be approximately $3,984.90 per month. Upon maturity of Note B, Debtors shall make a balloon payment to pay in full any remaining unpaid balance. The estimated balloon payment is $191,280.00, and Debtors anticipate that they will be able to refinance the balloon payment. The Class 8 claimant shall retain its lien against 103 W. Camp Wisdom Rd, Duncanville, Texas until the Class 8 secured Claim is paid related to that property. Once the Class 8 secured Claim is paid in full, the Class 8 claimant shall promptly release its lien against the Camp Wisdom Road Property. The Class 8 Claims are impaired.

5.7 <u>All Allowed Secured Claims of Comerica Bank</u>: (Class 9) - The estimated Class 9 Claim is $254,397.22 for the secured claim related to the property located at 2617 Bolton Boone, Desoto, Texas. The Debtors believe the Class 9 secured Claim is over-secured, and the value of the Bolton Boone Property is in excess of the amount of the Class 9 secured Claim. The

Class 9 claim will be paid over a seventy-two (72) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of six and three-quarters percent per annum (6.75%). The monthly payment on the Class 9 claim will be approximately $3,000.00 per month. In addition, Debtors will pay the estimated costs and attorney's fees incurred by the Class 9 claimant directly to Comerica in the amount of $500.00 per month without interest until the fees and costs are paid in full. The estimated costs and attorney's fees for the Class 9 claimant is $22,118.55. At the end of month 72, Debtor shall make a balloon payment to pay the Class 9 claimant in full. The estimated balloon payment is $139,200.00, and Debtors believe and anticipate that they will be able to refinance the balloon payment. The terms of the underlying notes to Comerica are incorporated by reference other than the changes and modifications to the notes set forth in this Plan. In addition, the Debtors shall maintain insurance on the property and provide proof of same to Comerica along with proof of payment of post-petition ad valorem taxes on the Bolton Boone property. The Class 9 claim shall retain its lien(s) on 2617 Bolton Boone, Desoto, Texas until the Class 9 claim is paid in full. The Class 9 Claim is impaired.

5.8    All Allowed Secured Claims of Dallas County: (Class 10) - The estimated Class 10 Claim is $165,975.83. Dallas County filed a single proof of claim related to the real properties owned by the Debtors located in Dallas County, Texas. The Class 10 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 10 claim will be approximately $3,692.04 per month. The Class 10 claimant shall retain its lien(s) against the Dallas County properties as set forth in Debtors' schedules until the Class 10 claim is paid in full. However, each lien shall only apply to the individual property that supports the basis of the Class 10 Claimant's claim against that particular property. The Class 10 Claimant's liens and claims are not cross-collateralized. A copy of Debtors' Schedule A is attached as Exhibit "C" to Debtors' Disclosure Statement, and Dallas County has ad valorem tax claims against all of the real estate listed on Schedule A other than the real property located in the state of Maryland, Kaufman County and the country of Nigeria. The Class 10 Claim is impaired.

5.9    All Allowed Secured Claims of Greenleaf Village HOA, Inc.: (Class 11) - The estimated secured Class 11 Claim is $880.45. The Debtors believe the Class 11 secured Claim is over-secured, and the value of the property located at 2411 Poinciana Place, Dallas, Texas is in excess of the amount of the Class 11 secured Claim. The basis for the Class 11 Claim is Home Owner's Association fees related to the Debtors' homestead located at 2411 Poinciana Place, The Class 11 claim shall be paid in full at the time of confirmation. Upon payment of the allowed secured claim, Greenleaf Village HOA, Inc. shall promptly release its lien against 2411 Poinciana Place, Dallas, Texas. The Class 11 Claim is unimpaired.

5.10    All Allowed Secured Claims of HomeBank Texas: (Class 12) - The estimated Class 12 Claim is $544,731.73. HomeBank Texas filed a single proof of claim related to the property located at 2408 Victory Park Lane #931, Dallas, Texas and 2727 Bolton Boone, DeSoto, Texas, Units 106 and 107. The Debtors believe the Class 12 secured Claim is fully secured, and the Camp Wisdom Road and Victory Park Lane properties are equal to the amount of the Class 12 secured Claim given appropriate time to market. The Class 12 claim will be

paid over a seventy-two (72) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of five percent per annum (5.00%). The monthly payment on the Class 12 claim will be approximately $5,000.00 per month. At the end of month 72, Debtors shall make a balloon payment to pay the Class 12 claimant in full. The estimated balloon payment is $300,000.00, and Debtors believe and anticipate that they will be able to refinance the balloon payment. The Class 12 claimant shall retain its lien against 2727 Bolton Boone, DeSoto, Texas, Units 106 and 107 and 2408 Victory Park Lane #931, Dallas, Texas until the Class 12 secured Claim is paid in full. Once the Class 12 secured Claim is paid in full, the Class 12 claimant shall promptly release its lien against the Bolton Boone and Victory Park Lane properties. The Class 12 Claim is impaired.

5.11    All Allowed Secured Claims of the Internal Revenue Service: (Class 13) - The estimated Class 13 Claim is $626,194.02. The Debtors believe the Class 13 secured Claim is fully secured as the IRS has tax liens against the real estate in Dallas, Texas and Baltimore, Maryland. The Maryland properties are unencumbered except for the outstanding ad valorem taxes.   The Class 13 claim will be paid in full over a seventy-two (72) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of three percent per annum (3.00%). The monthly payment on the Class 13 claim will be approximately $9,514.19 per month. The Class 13 claim shall retain its lien(s) until the Class 13 claim is paid in full. The Class 13 Claim is impaired.

5.12    All Allowed Secured Claims of Kaufman County: (Class 14) - The estimated Class 14 Claim is $6,888.40. The Debtors believe the Class 14 Claim is fully secured as a first lien ad valorem claim against the real estate. The Class 14 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 14 claim will be approximately $153.24 per month. The Class 14 claim shall retain its lien(s) on 519 N. Gun Barrel, Gun Barrel City, Texas, until the Class 14 claim is paid in full. The Class 14 Claim is impaired.

5.13    All Allowed Secured Claims of Baltimore County, Maryland: (Class 15) - The estimated Class 15 Claim is $11,886.47. Baltimore County filed a single proof of claim related to the real properties owned by the Debtors located in Baltimore County, Maryland. The Class 15 claim will be paid in full over a sixty (60) month period commencing within 30 days after the Effective Date of the confirmed Plan with interest at a rate of twelve percent per annum (12.00%). The monthly payment on the Class 15 claim will be approximately $264.42 per month. The Class 15 claim shall retain its lien(s) on 30 Gwynnswood Road, Owings Mills, Maryland, 34 Gwynnswood Road, Owings Mills, Maryland, 36 Gwynnswood Road, Owings Mills, Maryland, and 38 Gwynnswood Road, Owings Mills, Maryland until the Class 15 claim is paid in full. However, each lien shall only apply to the individual property that supports the basis of the Class 15 Claimant's claim against that particular property. The Class 15 Claimant's liens and claims are not cross-collateralized. The Class 15 Claim is impaired.

5.11    All Allowed Unsecured Claims: (Class 16) – A Class 16 Claimant holding an Allowed Unsecured Claim shall be paid a pro rata share of $270,950.52 seventy-two (72) months from the effective date of the confirmed plan. Debtor shall begin making payments in

monthly installments on the Class 16 Claims thirty (30) days after the Effective date of the confirmed plan. To the extent a claim is not allowed until a date after the commencement of the seventy-two (72) month payment period, payments on such allowed claim will commence and be due and payable on the first day of the month following the date of the order allowing such claim, and the first day of each month remaining in the seventy-two (72) month payment period in an amount sufficient to pay the allowed unsecured claim its pro rata share as set forth herein. The first payment to Class 16 Claimants will be the claimant's pro rata share of the monthly payment of $3,000.00 designated for allowed unsecured claims. Monthly payments on allowed unsecured claims will continue each month for sixty (60) months, and allowed unsecured claimants will continue to receive their pro rata portion of the $3,000.00 monthly payment for sixty (60) months. Beginning in month sixty-one (61), the monthly payment designated for unsecured creditors will increase to $7,579.21. Allowed unsecured claimants will receive a pro rata distribution of the $7,579.21 monthly payment for twelve (12) months beginning in month sixty-one (61) and continuing through the conclusion of the Plan in month seventy-two (72).

At the time of the filing of Debtors' Plan and Disclosure Statement, unsecured creditors had filed approximately $791,160.05 in undisputed[1] unsecured Claims. Debtors scheduled an additional $3,275,213.55 in undisputed[2] unsecured claimants that have not filed claims. Debtors estimate the total of allowed unsecured claims will be approximately $4,066,373.60. Debtors estimate the dividend to unsecured creditors to be approximately six and one half percent (6.5%) of a creditor's allowed unsecured claim. The Class 16 claims are impaired.

5.12    Payments to the United States Trustee: The Reorganized Debtors shall pay all quarterly fees of the United States Trustee until the Case is closed.

## ARTICLE VI

## MEANS OF IMPLEMENTING THE PLAN

6.1    Operation of Business: Debtors are individuals and shall continue to work and operate as set forth in detail in Article II(A) of the Disclosure Statement. Debtors shall dedicate sufficient revenues to fund all the obligations contained herein.

6.2    Reorganized Debtors: Upon the Effective Date of the Plan, the Reorganized Debtors shall be the survivor of the Debtors.

6.3    Documents: All necessary documents for the implementation of this Plan, shall be executed by all necessary parties in interest on the Effective Date. To the extent that the parties in interest herein are unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter the Court shall have resolved said issues, and all such documents shall be binding on the Debtors, the creditors, and all other parties hereto.

---

[1] Debtor disputes the Community Trust Bank's unsecured claim for $125,000.00 and intends to file an objection to the claim.
[2] Debtor disputes the unsecured claims of Community Trust Bank and Bank of America.

6.4    <u>Reservation of Rights Under 1129(b)</u>:  Debtors reserves the right, pursuant to section 1129(b) of the Bankruptcy Code, to request the Court to confirm this Plan if all of the applicable requirements of section 1129(a) of the Bankruptcy Code have been met other than those of section 1129(a)(8).

## ARTICLE VII

### PROVISIONS FOR THE REJECTION OF<br><u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

7.1    <u>General Assumption of Executory Contracts</u>:    The Debtor anticipates the leases/executory contracts set forth below will be assumed or rejected at confirmation and paid in the ordinary course of business.   The Debtor does not anticipate any rejection damages related to these contracts or leases.  The Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to section 365 of the Code. Each pre-petition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease.  Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtors, or the Debtors-in-Possession that such contract or lease is an executory contract or unexpired lease or that any Debtors, or the Debtors in Possession has any liability thereunder.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumption under section 365 of the Bankruptcy Code as of the Effective Date.  The Reorganized Debtors shall continue to have all rights of assignment contained in 11 U.S.C. §365 of any executory contract or unexpired lease following confirmation of this Plan.

***The following contracts are expressly assumed by the Debtors:***

*Commercial Lease, Andy & Renee McMahon* - Debtors will assume this lease agreement. Debtors are the lessor, and Andy and Renee McMahon are the lessee for the property located at 101/103 Camp Wisdom Road, Suite F in Duncanville, Texas.

*Commercial Lease, HealthFirst Pharmacy, PLLC* - Debtors will assume this lease agreement. Debtors are the lessor, and HealthFirst Pharmacy PLLC is the lessee for the property located at 424 E. Pleasant Run Road in Dallas, Texas.

*Commercial Lease, Ja'el Mathis* - Debtors will assume this lease agreement. Debtors are the lessor, and Ja'el Mathis is the lessee for the property located at 101/103 Camp Wisdom Road, Suite B in Duncanville, Texas.

*Commercial Lease, Jimmie McMahon dba Duncanville Book Store* - Debtors will assume this lease agreement. Debtors are the lessor, and Jimmie McMahon dba Duncanville Book Store is the lessee for the property located at 101/103 Camp Wisdom Road, Suites H,I, J and K in Duncanville, Texas.

*Commercial Lease, Kimberly S. Michell & Bobby L. Person* - Debtors will assume this lease agreement. Debtors are the lessor, and Kimberly S. Michell & Bobby L. Person are the lessee for the property located at 101/103 Camp Wisdom Road, Suite A in Duncanville, Texas.

*Executory Contract, Lancaster Regional Hospital, L.P.* - Dr. Abraham Ariyo will assume this Medical Director Agreement.

*Commercial Lease, Margaret Springs* - Debtors will assume this lease agreement. Debtors are the lessor, and Margaret Springs is the lessee for the property located at 101/103 Camp Wisdom Road, Suite G in Duncanville, Texas.

*Commercial Lease, Mote Development, LLC* – Dr. Abraham Ariyo will execute a new lease with Mote Development, LLC as the current lease expired on September 30, 2015. Mote Development, LLC. is the lessor, and Dr. Abraham Ariyo is the lessee under this commercial lease agreement. Dr. Abraham Ariyo leases space for the operation of Dr. Abraham Ariyo's medical practice (Heartmasters, PA) located on Wheatland Road in Dallas, Texas. Dr. Abraham Ariyo is current under this lease agreement and wishes to continue leasing space from Mote Development, LLC. The terms for the new lease agreement will be as follows: Dr. Abraham Ariyo will execute a new lease with Heartmaster PA being the specifically noted and allowed sub lessee (any other sublease must secure Mote Development's written consent) for a two (2) year term. The lease obligations are: a) from October 1, 2015 through September 30, 2016 monthly rent will remain the same at $10,305.50 per month; and b) from October 1, 2016 through September 30, 2017 monthly rent will increase by 5% to $10,820.25 per month. The Lease will have an option in favor of the Debtor which may be transferred to any wholly owned entity of Debtor's, with prior written notice of such transfer being required. The option must be exercised within 90 to 60 days of the end of an applicable lease anniversary – in other words on the 59th day prior to October 1 of the applicable year, the applicable option will lapse if not timely exercised. The option price to be paid on or about October 1, 2016 is $700,000.00 and the option price to be paid on or about October 1, 2017 is $775,000.00.

*Commercial Lease, Quest Diagnostics Clinical Laboratories, Inc.* - Debtors will assume this lease agreement. Debtors are the lessor, and Quest Diagnostics Clinical Laboratories, Inc. is the lessee for the property located at 2727 Bolton Boone Drive, Suite 106, in DeSoto, Texas.

*Commercial Lease, Signs, Tees & Graphics, LLC* - Debtors will assume this lease agreement. Debtors are the lessor, and Signs, Tees & Graphics, LLC is the lessee for the property located at 101/103 Camp Wisdom Road, Suite C in Duncanville, Texas.

*Commercial Lease, Ted Flores* - Debtors will assume this lease agreement. Debtors are the lessor, and Ted Flores is the lessee for the property located at 101/103 Camp Wisdom Road, Suite E in Duncanville, Texas.

*Commercial Lease, Texas Hand Rehabilitation, LLC* - Debtors will assume this lease agreement. Debtors are the lessor, and Texas Hand Rehabilitation, LLC is the lessee for the property located at 2727 Bolton Boone Drive, Suite 107, in DeSoto, Texas.

*Executory Contract, Texas Regional Medical Center, LLC* - Dr. Abraham Ariyo will assume this emergency room on-call agreement.

*Commercial Lease, Whitestar Distributors, Inc.* - Debtors will assume this lease agreement. Debtors are the lessor, and *Whitestar Distributors, Inc.* is the lessee for the property located at 101/103 Camp Wisdom Road, Suite D in Duncanville, Texas.

### The following contracts are expressly rejected by the Debtors:

*Condominium Lease, Alexander Candelario* - Debtors will reject this executory contract. This is a condominium lease for the property located at 2408 Victory Park Lane #931 in Dallas, Texas. Debtors are the lessor, and Mr. Candelario was the lessee. Mr. Candelario has been delinquent on rent and has vacated the condominium. Debtors do not anticipate a rejection damage claim.

7.2    Cure of Defaults:  The Reorganized Debtors shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of sections 1123(a)(5)(G) and 365 (b) of the Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court within fifteen (15) days after the Confirmation Date and shall be titled "Assumption Cure Proof of Claim". Alternatively, the Reorganized Debtors may pay such amount as may be agreed upon between the Reorganized Debtors and any party to such Executory Contract. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if, the Reorganized Debtors files, within sixty (60) days of the filing of an Assumption Proof of Claim an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing in respect of the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtors on the later of: (1) ten (10) Business Days after the expiration of the sixty day period for filing an objection in respect of any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

7.3    Claims for Damages:  Any claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtors such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed not later than thirty (30) days after receipt of such claim. The Court shall determine any such objections, unless they are otherwise resolved. All Allowed Claims for rejection damages shall be treated as Class 16 Claims. Any claim not filed within such time will be forever barred from assertion against the Debtors or its Estate.

7.4    Proofs of Claims:  Each entity that is a party to an executory contract or unexpired lease rejected at Confirmation, and only such entity, shall be entitled to file, not later than thirty (30) days after the Confirmation Date or such later date specified by the Court in the Confirmation Order or in an Order approving such rejection, a proof of claim for damages alleged to have arisen from the rejection of the contract or lease to which such entity is a party.

## ARTICLE VIII

## MODIFICATION OF THE PLAN

8.1     <u>Amendments Prior to Confirmation Date</u>:  Debtors may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Reorganization.

8.2     <u>Amendments After Confirmation Date</u>:  Debtors may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

8.3     <u>Effect on Claims</u>:  A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

## ARTICLE IX

## RETENTION OF JURISDICTION

9.1     <u>Purposes</u>:  Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 case for the following purposes:

    i.      to determine any and all objections to the allowance of Claims or Interests, both before and after the Confirmation Date, including any objections to the classification of any claim or interest;

    ii.      to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with section 503(b) of the Bankruptcy Code or this Plan;

    iii.      to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which any Debtors is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

    iv.      to hear and determine any and all actions initiated by the Reorganized Debtors, whether by motion, complaint or otherwise;

    v.      to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi. to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii. to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii. to allow, disallow, determine, liquidate or estimate any claim or interest and to enter or enforce any order requiring the filing of any such claim or interest before a particular date;

ix. to enter such orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate orders to protect the Debtors from creditor actions;

x. to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi. to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii. to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

xiii. to authorize the sale of any Assets as provided by this Plan;

xiv. to enforce all orders, judgments, injunctions, and rulings entered in connection with the Cases;

xv. to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xvi. to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code;

xvii. to enter a Final Order and final decree closing the Chapter 11 case.

9.2     Exclusive Jurisdiction:  The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

9.3     Retained Jurisdiction for Taxes - Enforcement Remedies: Notwithstanding anything in this plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any such tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

9.4     Abstention:   If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 case, including the matters set forth in this Article XI, this Article XI shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE X

## CAUSES OF ACTION

10.1     Retention of Causes of Action:   All Claims and causes of action owned by the Debtors, causes of action that could have been brought by a Creditor on behalf of the Debtors, and all causes of action created by the Bankruptcy Code, shall be pursued by the Reorganized Debtors for the benefit of the Creditors, as provided herein.  The Reorganized Debtors shall have the exclusive right to settle or compromise all such causes of action subject to Court approval. Specifically, Debtors reserve the right to pursue the following claims or causes of action:

None.

## ARTICLE XI

## RESOLUTION OF UNDETERMINED CLAIMS

11.1     Procedure:  Within thirty (30) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtors may file with the Court objections to Claims and Interests and shall serve a copy of each such objection upon the Holder of the Claim or Interest to which such objection pertains.  Unless otherwise ordered by the Court, the Reorganized Debtors shall litigate to judgment, settle or withdraw objections to contested claims.

11.2     Allowance of Claims:  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Debtors makes any distributions to creditors at any time prior to a determination of

allowance of an Undetermined Claim, the Debtors shall reserve for such Undetermined Claim in the amount of the lessor of 1) any Proof of Claim filed by such a claimant; or 2) an amount set by the Court for such a reserve, after notice to such claimant and a hearing.

11.3    <u>Rights of Creditors</u>:    Unless and until an Undetermined Claim becomes an Allowed Claim, no creditor holding such a claim shall have any claim against the distribution held or reserved by the Reorganized Debtors with respect to such claim.

**ARTICLE XII**

**<u>GENERAL PROVISIONS</u>**

12.1    <u>Certain Rights Unaffected</u>:    Except as otherwise provided herein, any rights or obligations which the Debtors' creditors may have among themselves as to their respective claims or the relative priority or subordination thereof.

12.2    <u>Headings</u>:    The article and section headings used in this Plan are inserted for convenience and reference only and neither constitutes a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

12.3    <u>Severability</u>:    Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

12.4    <u>Governing Law</u>:    Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

12.5    <u>Successors and Assigns</u>:    The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

12.6    <u>Discharge:</u> In accordance with 11 U.S.C. §541(d)(5)(A) and (C), after notice and a hearing and unless the Court orders otherwise for cause, confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan.  Additionally, a discharge may not be granted unless after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that section 522(q)(1) may be applicable to the debtor and there is not pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

12.7    <u>Case Closing.</u>  The Reorganized Debtors shall file an application for final decree and to close the Case and promptly set a hearing no later than twelve (12) months after the

Effective Date or show cause to the Court within such period why the Court should not enter a final decree.  Any adversary proceeding that is a Cause of Action shall survive the entry of a final decree and closing of the Case and jurisdiction shall be retained over such proceeding. Debtors reserves the right to reopen this Chapter 11 proceeding in order to receive their discharge contingent upon the requirements set forth above, and thus the closing of this Chapter 11 proceeding will thus be without prejudice.

12.8    Exculpations:  The Debtors' professionals shall not have or incur any liability to any holder of a Claim for any act, event, or omission in connection with, or arising out of, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

12.9    Injunctive Relief:  On and after the Confirmation Date, all creditors and persons acting in concert with them are enjoined and restrained pursuant to section 105 of the Code from taking any action to correct or enforce any Claim directly or indirectly against the Reorganized Debtors in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan voids any judgment at any time obtained with respect to any debt discharged.

# ARTICLE XIII

## EVENTS OF DEFAULT

13.1    Events of Default: Failure to make Plan payments shall constitute an event of default under the Plan.  In the event of default under the Plan, creditors will provide notice of default to the Reorganized Debtors.  The Reorganized Debtors will have 20 days from the date of such notice to cure the default.  If the Reorganized Debtors fail to cure the default, creditors shall be entitled to collect all amounts owed in accordance with applicable bankruptcy and non-bankruptcy law.

13.2    Events of Default; Acceleration (Internal Revenue Service):

a.    The occurrence of any of the following shall constitute an event of default under the Plan:

1) Failure to Make Payments. Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the

Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the automatic stay provided under 11 U.S.C. 362 shall lift without further notice by the Court and the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: /IRS, 1100 Commerce Street, Mail Code **5026** DAL, Dallas, Texas 75242, Attn: Lorraine Washington.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

Dated:  October 2, 2015                    By:

                                           */s/Adeniran Abraham Ariyo*
                                           Adeniran Abraham Ariyo

                                           */s/ Sarah Hope Ariyo*
                                           Sarah Hope Ariyo

OF COUNSEL:

By: */s/Areya Holder Aurzada*
    Areya Holder Aurzada
    State Bar No. 24002303
    Sabrina Johnson Craig
    State Bar No. 24082354

**DEBTORS' THIRD AMENDED PLAN OF REORGANIZATION**

HOLDER LAW
800 West Airport Freeway, Suite 800
Irving, Texas 75062
(972) 438-8800 – Telephone
(972) 438-8825 – Telecopier
Email: areya@holderlawpc.com